UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
EMIR CAROLINA GARCIA and similarly situated
employees,

**REPORT AND**
**RECOMMENDATION**

Plaintiffs,

-against-

CV 15-663 (SJF) (ARL)

PARIS MAINTENANCE a/k/a PARIS MAINTENANCE
& MANAGEMENT CO., INC., a/k/a METRO MEDICAL
MAINTENANCE, a/k/a METRO FIRE SAFETY
GUARDS, INC., a/k/a METRO EVENTS PLANNING
CORP., THOMAS PARISSIDI, Individually, and
CHARLES LOIODICE a/k/A CHARLIE PARIS,
Individually,

Defendants.
-----------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

Before the Court is Plaintiff's motion for leave to file a second amended complaint. For

the reasons that follow, the Court respectfully recommends that Plaintiff's motion be denied.

## BACKGROUND

On February 10, 2015, plaintiff Emir Carolina Garcia ("Plaintiff") commenced this action

on behalf of herself and others similarly situated against defendants Paris Maintenance a/k/a

Paris Maintenance & Management Co., Inc., a/k/a Metro Medical Maintenance, a/k/a Metro Fire

Safety Guards, Inc., a/k/a Metro Events Planning Corp., Thomas Parissidi, Individually, and

Charles Loiodice a/k/a Charlie Paris, Individually (collectively, "Defendants") seeking to recover

unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and

the New York Labor Law §§ 190 *et seq.* ("NYLL"). The complaint alleged that Plaintiff worked

for Defendants as a non-exempt cleaner/maintenance worker in or about New York from

approximately June 2013 to June 2014. Compl. ¶ 4. The complaint further alleged that

individual defendants Parissidi and Loiodice had each been, at all times relevant to the complaint, "an owner, partner, officer, and/or manager of Paris Maintenance." *Id.* ¶¶ 8, 10.

Judge Feuerstein conducted an Initial Conference on April 30, 2015.  DE 28.  According to Defendants, Judge Feuerstein expressed concern that there were a large number of defendants listed in the complaint without any accompanying facts establishing them as employers within the meaning of the FLSA.  Defs.' Mem. of Law in Opp'n, DE 47, at 1.  Thereafter, on May 14, 2015, Plaintiff filed an amended complaint.  DE 29.  The primary change to the amended complaint was the addition of Federal Rule of Civil Procedure ("Rule") 23 class action allegations.  *Id.* ¶¶ 40-47.  The amended complaint did not allege any additional facts regarding the Defendants.  On May 19, 2015, Defendants filed an answer to the amended complaint.  DE 36.

The parties met before Judge Feuerstein on June 17, 2015.  DE 37.  According to Defendants, Judge Feuerstein expressed renewed concerns that the pleading requirements had not been satisfied by the amendments and inquired whether Defendants wished to make a motion.  Defs.' Mem. of Law in Opp'n, DE 47, at 2.  When counsel for Defendants replied in the affirmative, counsel for Plaintiffs informed the Court that they intended to file a motion for leave to amend their complaint again.  *Id.*  Thereafter, the parties appeared before Judge Feuerstein on July 13, 2015, at which time she issued a briefing schedule on Plaintiff's motion for leave to file a second amended complaint.[1]  DE 39.

---

[1]  In accordance with Judge Feuerstein's Order, Plaintiff initially filed her motion to amend on July 15, 2016, and included a proposed Second Amended Complaint as part of her motion.  DE 38.  Because Judge Feuerstein's Order setting a briefing schedule had not yet been docketed, this Court terminated Plaintiff's motion with leave to renew upon Plaintiff's compliance with this Court's requirement of the filing of a pre-motion conference letter request prior to the filing of a nondispositive motion.  Plaintiff thereafter filed such a request, and the Court established a new briefing schedule.  In the motion that is presently before the Court, DE 44, Plaintiff did not attach a copy of the proposed second amended complaint.  The Court

**DISCUSSION**

I.     **Standard of Law**

Rule 15(a) provides that in cases where a party cannot amend as a matter of course, "[a] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A court "should freely give leave when justice so requires" and such leave is in the court's discretion. *Id.* As often noted by the Second Circuit, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Defendants argue that leave to amend should be denied because the proposed amendments are futile. An amendment is futile if the proposed claim cannot withstand a motion to dismiss under Rule 12(b)(6). *See, e.g., Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). Thus, in deciding whether an amendment is futile, the Court uses "the same standard as those governing the adequacy of a filed pleading." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal

---

assumes, as did Defendants in their opposition papers, that the proposed pleading attached to Plaintiff's initial motion is the proposed amended complaint Plaintiff wishes to place before the Court in the instant motion.

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

## II.   Analysis

### A.   Proposed Alter Ego Liability

The proposed second amended complaint, like the two complaints before it, names five separate corporate entities as defendants: Paris Maintenance; Paris Maintenance & Management Co., Inc.; Metro Medical Maintenance; Metro Fire Safety Guards, Inc.; and Metro Event Planning Corp. The proposed pleading also names two individual defendants: Thomas Parissidi and Charles Loiodice. According to Plaintiff's counsel, after the filing of the original and first amended complaints, Plaintiff and other witnesses provided him with additional pay stubs and facts which support the theory that the defendant corporations are alter egos. Plaintiff argues that if she is not permitted to plead the remedy of piercing the corporate veil, the corporate defendants will be able to shield themselves in an effort to deny Plaintiff her unpaid wages. In light of this "newly discovered information," Plaintiff seeks leave to file her proposed second amended

complaint "so as to allow her to plead the remedy of alter ego corporations [and] to pierce the corporate veil."  Pl.'s Mot to File a Second Am. Compl., DE 44, at 14.[2]

The proposed second amended complaint contains the following allegations with regard to alter ego liability:

2.  As more fully described below, during the relevant time periods, all of the corporate Defendants, which appear to be shell corporations, formed and operated for the purpose of avoiding to pay overtime to its employees, as well as the individual Defendants willfully violated the FLSA and the applicable state laws of the State of New York by failing to pay Plaintiffs for their overtime hours worked based upon their unlawful policies and practices.  All of the Defendants failed to pay Plaintiffs for their hours worked in excess of forty (40) hours per work week at the statutorily required rate of pay in direct violation of the FLSA and applicable state laws of the State of New York.

3.  Defendant Paris Maintenance, or whichever other shell corporation as the case may be, and all of its alter ego Corporation Defendants, are corporations organized under the laws of the State of New York, with an address for service of process located at 588 Meacham Ave., Elmont, NY 11003.

4.  More specifically, Plaintiff worked with the same supervisors, at the same locations, doing the same work duties, yet received checks from each of the six named Defendants.

5.  Plaintiff was led to believe that his employer was Paris Maintenance, when in fact, Paris Maintenance, one of the other shell companies[,] was simply a shell of the other Corporate Defendants.

6.  An investigation conducted regarding ownership, operation, and location of all of the named [Defendants] reveals that all of the Corporate Defendants are connected either by ownership or location.

7.  The six Corporate Defendants are alter egos of the other, and were formed and operate as one Corporation in an attempt to defraud Plaintiff and avoid paying her overtime.

---

[2]  Although Plaintiff claims that her proposed second amended complaint is based on "newly discovered information," Plaintiff also states that she "intended on filing a[] [First] Amended Complaint with facts relating to Plaintiff's claim seeking to pierce the corporate veil, but she inadvertently filed the wrong draft of the Amended Complaint."  Pl.'s Mot to File a Second Am. Compl., DE 44, at 5 ¶ 3.

8.   In issuing separate checks form separate Corporate Defendants, the named Corporate Defendants circumvented the requirements under the FLSA as well as the New York Labor Laws.

9.   The Corporate Defendants have used the main corporate defendant, Paris Maintenance, or another of the corporate shell defendants whichever that may be, as a mere shell, instrumentality, and/or conduit from which said Corporate Defendants have carried on their business as if the main corporate defendant did/does not exist, to such an extent that any individuality or separateness of the named corporate Defendants has never existed.

. . . .

11.  Plaintiff Garcia worked for Defendants as a non-exempt cleaner/maintenance worker in and about New York from in or about June 2013, through in or about June, 2014.

12.  Defendant, Paris Maintenance, or whichever other shell corporation as the case may be, and all of its alter ego Corporation Defendants, are corporations organized under the laws of the State of New York, with an address for service of process located at 588 Meacham Ave, Elmont, NY 11003.  Upon information and belief, at all times relevant to this Amended Complaint, the Corporate Defendants are in the commercial cleaning and maintenance business in the tri state area.

13.  Upon information and belief, at all times relevant to this Second Amended Complaint, the Corporate Defendants employ individuals to perform labor, such as commercial cleaners and maintenance laborers, on its behalf.  However, the Corporate Defendants do not operate as single unassociated companies, rather, they employ the same persons so as to avoid paying overtime.

14.  Upon information and belief, at all times relevant to this Second Amended Complaint, Individual Defendant Parissidi has been an owner, partner, officer, and/or manager of Paris Maintenance, or for another of the shell corporations, as the case may be, and all of the other alter ego Corporate Defendants.

15.  Upon information and belief, at all times relevant to this Second Amended Complaint, Parissidi managed, owned, controlled and/or operated Paris Maintenance or for another of the shell corporations, as the case may be, and all of the other alter ego Corporate Defendants, and regularly exercised the authority to hire and fire employees, determine the work schedule of employees, set the rate of pay of employees and control the finances and operations of the businesses.  Additionally, Individual Defendant Parissidi directly or indirectly acted in the interest of an employer towards Plaintiff, at all material times, including, without limitation, directly or indirectly controlling the terms of employment of Plaintiff. By virtue of

such control and authority, Individual Defendant Parissidi was an employer of Plaintiff, as such term is defined by the Act, 29 U.S.C. 201.et. seq.

16.  Parissidi was often times in the main office managing the business, as well as the operations of the other shell Corporate Defendants and the cleaners on a regular basis.

17.  Upon information and belief, at all times relevant to this Second Amended Complaint, Individual Defendant Loiodice has been an owner, partner, officer, and/or manager of Paris Maintenance or for another of the shell corporations, as the case may be, and all of the other alter ego Corporate Defendants.

18.  Upon information and belief, at all times relevant to this Second Amended Complaint, Loiodice managed, owned, controlled and/or operated Paris Maintenance or for another of the shell corporations, as the case may be, and all of the other alter ego Corporate Defendants, and regularly exercised the authority to hire and fire employees, determine the work schedule of employees, set the rate of pay of employees and control the finances and operations of the businesses. Additionally, Individual Defendant Loiodice directly or indirectly acted in the interest of an employer towards Plaintiff, at all material times, including, without limitation, directly or indirectly controlling the terms of employment of Plaintiff and other similarly situated employees.  By virtue of such control and authority, Individual Defendant Loiodice was an employer of Plaintiffs, as such term is defined by the Act, 29 U.S.C. 201.et. seq.

19.    Loiodice was in the main office on a daily basis directing the managers/supervisors about the daily operation of Paris Maintenance or for another of the shell corporations, as the case may be, and all of the other alter ego corporate defendants.

. . . .

34.  The Corporate Defendants had Plaintiff working under one corporate Defendant and had the other shell corporations issue checks to Plaintiff so as to avoid paying overtime.

. . . .

36.  Throughout his employment with Defendants, the actual operating Corporate Defendant, Plaintiff received checks with different corporate names across the top of the check.

37.  During Plaintiffs employment with Defendants, Plaintiff worked with the same co-workers, was supervised by the same person, worked at the same locations, yet was paid with checks with different corporate names on them.

38.  During the employment of Plaintiff by Defendants, other laborers employed by Defendants were paid in a similar manner as Plaintiff, and their working schedules were also similar.

Second Am. Compl. ¶¶ 2-9, 11-19, 34,[3] 36-38

In opposing Plaintiff's motion to amend, Defendants' brief is bereft of citation to any authority on why Plaintiff's allegations of alter ego liability are insufficient.  Instead, Defendants assert that the motion should be denied because Plaintiff has not provided any affidavits or documents to support the proposed allegations.  Defendants' argument is based on a fundamental misunderstanding of the applicable standard of review the Court must apply in determining whether the proposed amendment is futile, which as the Court noted above is whether the amendment can withstand a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Wilson v. Southampton Hosp.*, No. 14-cv-5884, 2015 WL 5124481, at *8 (E.D.N.Y. Aug. 28, 2015) (finding it improper to consider affidavits on a Rule 12(b)(6) motion).  Nonetheless, even when applying the correct standard, the Court finds that the proposed pleading fails to sufficiently allege alter ego liability.

"In the Second Circuit, [alter ego liability] is determined using a two-pronged test that asks '(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness.'"  *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08 Civ. 1533, 2011 WL 1142916, at *5 (S.D.N.Y. Mar. 22, 2011) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177-78 (2d Cir. 2008)), *adhered to on reconsideration*, 2011 WL 134456 (S.D.N.Y. Mar. 29, 2011); *see also Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010) ("Alter ego liability exists when a parent or

---

[3]  There are two paragraphs numbered "34" in the proposed second amended complaint.

owner uses the corporate form 'to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own.'") (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979) (interpreting New York law)), *aff'd*, 133 S. Ct. 1659 (2013). "In deciding whether to pierce the corporate veil, 'courts look to a variety of factors, including the intermingling of corporate and [shareholder] funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors.'" *Id.* (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 18 (2d Cir. 1996)). "[A] claim sufficient to overcome the presumption of separateness afforded to related corporations is not established by the bare allegation that one corporation dominated and controlled another." *Id.* (citation and internal quotation marks omitted). "Moreover, dismissal of an alter ego claim at the pleading stage is appropriate where 'the pleadings are devoid of any specific facts or circumstances supporting' the assertion of alter ego liability." *Gary Friedrich Enters.*, 2011 WL 1142916, at *6 (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

Here, the proposed pleading alleges, *inter alia*, that (1) Paris Maintenance was "simply a shell of the other Corporate Defendants," Proposed Second Am. Compl. ¶ 5; (2) "all of the Corporate Defendants are connected by either ownership or location," *id.* ¶ 3; (3) "[t]he six Corporate Defendants are alter egos of the other, and were formed and operate as one Corporation in an attempt to defraud Plaintiff and avoid paying her overtime, *id.* ¶ 7; and

(4) "[t]he Corporate Defendants have used the main corporate defendant, Paris Maintenance, or another of the corporate shell defendants whichever that may be, as a mere shell, instrumentality, and/or conduit from which said Corporate Defendants have carried on their business as if the main corporate defendant did/does not exist, to such an extent that any individuality or separateness of the named corporate Defendants has never existed, ¶ 9.  The Court need not accept these conclusory allegations as true.  *See Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (finding court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions").  The only specific allegations Plaintiff asserts are that the corporate defendants share an address for service of process, *id.* ¶ 12, and that the corporate defendants issued Plaintiff separate checks – despite the fact that Plaintiff worked for the same supervisors at the same locations – to circumvent the requirements of the FLSA, *id.* ¶¶ 4, 8.  These facts are insufficient to pierce the corporate veil of the five corporate defendants.  Missing from Plaintiff's proposed amendment are any specific allegations with regard to each corporate entity or how the separate identities of these corporations were so disregarded that one was a mere instrumentality of the other.  For example, there are no allegations that corporate funds were intermingled, that any of the corporate defendants were undercapitalized, that the corporate defendants failed to maintain corporate formalities, or that any corporate officers ceded control from which domination may be inferred.  Similarly, there are no allegations specifying the role of each defendant in abusing the corporate form to perpetuate a fraud other than the allegation that each corporate entity issued Plaintiff a paycheck.  The repeated allegation that the corporate defendants were shell corporations formed to evade overtime pay requirements is not sufficient to withstand a motion to dismiss.  Accordingly, based on the proposed allegations, amending the complaint to assert alter ego liability would be futile.

10

### B.    Employer Liability

Defendants argue that the proposed second amended complaint is futile because the

allegations fail to establish that Defendants are "employers" within the meaning of the FLSA.

The FLSA broadly defines employer as "any person acting directly or indirectly in the interest of

an employer in relation to an employee."  29 U.S.C. § 203(d).  Similarly, under the NYLL,

"employer" is defined as any individual or business "acting as [an] employer."  NYLL § 651(6).

"Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the

definition used by the FLSA."  *Fermin v. Las Delicias Peruanas Rest., Inc.*, No. 14-CV-0559,

2015 WL 1285960, at *15 (E.D.N.Y. Mar. 19, 2015) (citation and internal quotation marks

omitted).

"Because the statute . . . offers little guidance on whether a given individual is or is not an

employer," courts in this Circuit look to the "economic reality" of the relationship, weighing the

following factors:

> whether the alleged employer (1) had the power to hire or fire
> employees, (2) supervised and controlled employee work schedules
> or conditions of employment, (3) determined the rate and method
> of payment, and (4) maintained employment records.

*Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess*

*Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984) (the "*Carter* factors")).[4]  The economic reality test "'is

useful largely in cases involving joint claims of joint employment[,]' . . . because, when an entity

exercises those four prerogatives, that entity, in addition to any primary employer, must be

considered a joint employer."  *Zheng  v. Liberty Apparel Co., Inc.,* 355 F.3d 61, 67 (2d Cir.

---

[4]  "The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time."  *Zheng v. Liberty Apparel Co., Inc.,* 355 F.3d 61, 66 (2d Cir. 2003).

11

2003) (quoting *Danneskjold v. Hausrath,* 82 F.3d 37, 43 (2d Cir. 1996)).  Nonetheless, "a

positive finding on th[e]se four factors is [not] necessary to establish an employment

relationship," *id.* at 69, and "a court cannot use the *Carter* factors as an 'exclusive four-factor

test' to determine whether an entity is an employer under the FLSA." *Copantitla v. Fiskardo

Estiatorio, Inc.*, 788 F. Supp. 2d 253, 309 (S.D.N.Y. 2011) (quoting *Zheng*, 355 F.3d at 71).

Instead, "the broad language of the FLSA . . . demands that a district court look beyond an

entity's formal right to control the physical performance of another's work before declaring that

the entity is not an employer under the FLSA." *Zheng*, 355 F.3d at 69.  "Thus, in *Zheng*, the

Second Circuit set forth an additional six-factor test to assist in determining whether 'an entity

that lacked formal control nevertheless exercised functional control over a worker,'" *Sampson v.

Madhouses Health Network, Inc.*, No. 10-CV-1342, 2012 WL 3027838, at *3 (E.D.N.Y. July 24,

2012) (quoting *Barfield v. N.Y. City Health and Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)):

> (1) whether [the alleged employer's] premises and equipment were
> used for the plaintiffs' work; (2) whether [plaintiff's employer] had
> a business that could or did shift as a unit from one putative joint
> employer to another; (3) the extent to which plaintiffs performed a
> discrete line-job that was integral to [the alleged employer's]
> process of production; (4) whether responsibility under the
> contracts could pass from one subcontractor to another without
> material changes; (5) the degree to which [the alleged employer] or
> [its] agents supervised plaintiffs' work; and (6) whether plaintiffs
> worked exclusively or predominately for [the alleged employer].

*Zheng*, 355 F.3d at 72.  Ultimately, "'the various factors relied upon by [the Second Circuit] . . .

state no rigid rule for the identification of an FLSA employer.'" *Sampson*, 2012 WL 3027838, at

*4 (quoting *Barfield*, 537 F.3d at 143).  "'To the contrary . . . they provide 'a nonexclusive and

overlapping set of factors' to ensure that the economic realities test mandated by the Supreme

Court is sufficiently comprehensive and flexible to give proper effect to the broad language of

the FLSA." *Barfield*, 537 F.3d at 143 (quoting *Zheng*, 355 F.3d at 75-76)).

Plaintiff does not argue – and the proposed pleading does not allege – that each corporate defendant is an "employer" because each one independently exercises some formal or functional control over Plaintiff's employment.  Instead, Plaintiff argues that the proposed pleading establishes that individual defendants Parissidi and Loiodice are employers because they satisfy the *Carter* factors.  That is to say, the proposed pleading alleges that Parissidi and Loiodice "regularly exercised the authority to hire and fire employees, determine the work schedule of employees, set the rate of pay of employees[,] . . . control the finances and operations of the businesses[,] . . . directly or indirectly controlled] the terms of employment of Plaintiff," and were "often times in the main office managing the business, as well as the operations of the other shell Corporate Defendants and the cleaners on a regular basis."  Proposed Second Am. Compl. ¶¶ 15-16, 18-19.  Putting aside the fact that these conclusory allegations merely restate the *Carter* factors and fail to allege any specific factual support, the Court finds that the proposed pleading does not adequately allege that Plaintiff was employed by *all* Defendants.  In an attempt to tie Parissidi and Loiodice's control to all of the corporate Defendants, Plaintiff relies on an alter ego theory of liability instead of alleging that each corporate defendant controlled Plaintiff's employment.  *See, e.g.*, *id.* ¶¶ 15, 18 (alleging that Parissidi and Loiodice "managed, owned, controlled and/or operated Paris Maintenance or . . . another of the shell corporations, as the case may be, and all of the other alter ego Corporate Defendants").  The Court has already found that the allegations do not adequately allege this theory of liability.

The only specific allegation regarding the corporate Defendants' control over Plaintiff's employment is that "Plaintiff worked with the same supervisors, at the same locations, doing the same work duties, yet received checks from each of the six named Defendants."  *Id.* ¶ 4.  While this allegation supports the finding that the corporate Defendants "determined the . . . method of

13

payment," *Carter*, 735 F.2d at 12, this allegation alone is insufficient to allege a joint employer relationship or that all Defendants meet the definition of "employer" under the FLSA.  This is particularly true where, as here, there are no facts bearing on the remaining *Carter* and *Zheng* factors.  In short, Plaintiff has failed to include factual allegations sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555; *see also DeJesus*, 726 F.3d at 86 (noting the tension in FLSA cases among plaintiffs' difficulty in pleading a case absent discovery and the use of "barebones complaints against any number of possible defendants about whom [plaintiffs] have little or no evidence of FLSA violations for the purpose of identifying a few of them who might make suitable defendants" in light of the "modern rules of pleading established by the Supreme Court" in *Iqbal* and *Twombley*).

### C.    Defendants' Remaining Arguments

Defendants argue that the proposed amendment fails to adequately allege a cause of action for unpaid overtime.   The proposed second amended complaint provides as follows:

29.  From in or about June, 2013, through in or about June, 2014, Plaintiff Garcia worked for Defendants' commercial cleaning and maintenance business performing cleaning and maintenance work.

30.  Plaintiff was scheduled to work in excess of forty (40) hours per workweek.

31.  Plaintiff's duties included commercial cleaning and maintenance on behalf of Defendants.

32.  Plaintiff was scheduled to work six (6) to seven (7) days per workweek.

33.  Plaintiff routinely worked on average approximately eighty-four (84) hours per week on behalf of Defendants, but was not compensated at the required statutory rate of pay for her hours worked in excess of forty (40) hours per work week.

34. The Corporate Defendants had Plaintiff working under one corporate Defendant and had the other shell corporations issue checks to Plaintiff so as to avoid paying overtime.

34.  Plaintiff was paid a weekly rate of $770.00, regardless of the number of hours she worked each week. She received no additional compensation for her hours worked in excess of forty (40) hours per workweek.[5]

Proposed Second Am. Compl. ¶¶ 29-34.

These allegations are virtually identical to the those in the first amended complaint, with the exception of the addition of the first paragraph number "34" and its alter ego allegations.  To the extent Plaintiff was directed to cure defects in her pleading, that has not been done. Plaintiff's general allegation that she "routinely worked on average approximately eighty-four (84) hours per week" but was not paid for "for her hours worked in excess of forty (40) hours per work week," *id.* ¶ 33, is insufficient to state a claim for failure to pay overtime "in a given workweek." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  Plaintiff's allegations "boil[] down to a conclusory assertion, without any supporting factual context, that the [D]efendants violated the FLSA overtime provision because the [P]laintiff worked some number of excess hours in some unidentified week." *Bustillos v. Academy Bus, LLC*, No. 13 Civ. 565, 2014 WL 116012, at *3 (S.D.N.Y. Jan. 13, 2014).  Indeed, because "Plaintiff only pleads hours in the aggregate, the Court cannot determine which hours were not paid and whether any unpaid hours qualify for overtime payment." *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *56 (E.D.N.Y. Sept. 7, 2013), *aff'd*, 622 F. App'x 9 (2d Cir. 2015).  Thus, the Court finds that the proposed second amended complaint would be futile because it does not adequately allege an overtime wage claim.  *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 201 (2d Cir. 2013) (upholding dismissal of complaint where the plaintiff had "merely alleged that they were not paid for overtime hours

---

[5]  As noted above, the proposed second amended complaint contains two paragraphs numbered "34."

15

worked"); *Bustillos*, 2014 WL 116012 at *3 (holding that plaintiff's allegation that "his schedule 'varied' and he 'would regularly work from 60 to 90 hours per week'" was not sufficient); *Gisome v. Healthex Corp.,* No. CV 13-2541, 2014 WL 2041824, at *2 (E.D.N.Y. May 15, 2014) (finding that plaintiff's allegation of an "average" of 50 hours or more was insufficient to plead FLSA overtime claim); *Spiteri*, 2013 WL 4806960, at *56 (holding that the plaintiff's allegation that he "worked approximately fifty (50) to sixty (60) hours per week" did not state an overtime wage claim).

## CONCLUSION

For the reasons stated above, the Court finds that the proposed second amended complaint does not adequately allege alter ego liability, does not allege that each corporate defendant is an "employer" under the FLSA and the NYLL, and does not state a claim for unpaid overtime.  Accordingly, the Court respectfully recommends that Plaintiff's motion for leave to file a second amended complaint be denied.[6]

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service.  Failure to file objections within this period waives the right to appeal the District Courts Order.  See 28 U.S.C.

---

[6] To the extent the first amended complaint contains the same overtime wage allegations against the same corporate defendants, the Court notes that the sufficiency of the current pleading is not before this Court.  To the extent Defendants wish to attack the sufficiency of the current pleading, Defendants are advised to seek the appropriate relief in a separate motion before the District Judge.

§ 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        May 4, 2016

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge

17